UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DORCHEN/MARTIN ASSOCIATES, INC.,

        Plaintiff,                                      Case No. 11-10561
                                                  Honorable Thomas L. Ludington

v.

THE BROOK OF CHEBOYGAN, INC.;
PRACTICAL ENGINEERS, INC.,

        Defendants.

_____/

**OPINION AND ORDER DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants allege that Plaintiff does not own a valid, enforceable copyright, and have filed a motion for summary judgment asserting that very point. Because Defendants' contention is incorrect, the motion will be denied.

**I**

Plaintiff Dorchen/Martin Associates, Inc. was created in 1989 with the merger of two architectural firms: A. Samuel Dorchen, Architect; and F. Zeno Martin Associates, Architects/Planners. Since that time, Plaintiff has provided comprehensive architectural consulting services for hire. In February 2001, Plaintiff agreed to create construction documents, including architectural and structural plans, for DeWitt Builders AZ (DBA). DBA intended to construct an assisted living facility known as "The Brook" in Roscommon, Michigan. The agreement was signed by James DeWitt, DBA's president, and Sam Dorchen. DBA agreed to pay Plaintiff pursuant to a fee schedule, and in the event of termination, Plaintiff agreed to give "[a]ll work performed up to the termination date" to DBA. Defs.' Mot. Ex. B, at 7, ECF No. 35. No such contingency was necessary, as Plaintiff provided the construction documents pursuant

to the contract, and DBA paid in full.  DBA, as General Contractor, then constructed The Brook

of Roscommon pursuant to Plaintiff's plans.

DBA was the General Contractor on two other construction projects using Plaintiff's

plans: The Brook of West Branch and The Brook of Houghton Lake.  Plaintiff prepared the plans

for each facility, endeavoring to make them "as identical as possible" to the Roscommon plan,

subject to local site considerations.  DeWitt Decl. ¶ 6.  When creating the Houghton Lake facility

plan, Plaintiff did not contract with DBA, but instead with The Brook of Houghton Lake, Inc.

The officers and directors of The Brook of Houghton Lake, Inc. include James DeWitt, DBA's

president, as well as Jerry DeWitt, William Carey, and Diane Friedriechsen.  Pl.'s Am. Compl. ¶

16, ECF No. 16.  Plaintiff created the Houghton Lake plan, Pl.'s Am. Compl. Ex. F, and The

Brook of Houghton Lake facility was completed by DBA in 2004.  As noted on the Houghton

Lake plan, Plaintiff authored the plan, and the "document and the subject matter contained

therein is proprietary and not to be used or reproduced without the written permission of

[Plaintiff]."  *Id.*

Defendant The Brook of Cheboygan, Inc. was created on or about May 8, 2009.  The

officers and directors of Defendant Brook are James DeWitt, William Carey, and Diane

Friedriechsen, three of the officers and directors of The Brook of Houghton Lake, Inc.  Pl.'s Am.

Compl. ¶ 18.  In 2009, Plaintiff learned that Defendant Brook planned to build a new facility in

Cheboygan, Michigan.  On September 29, 2009, Mr. Dorchen sent Mr. DeWitt a letter, noting he

had been informed that Defendant Brook "submitted preliminary land use documents that are

similar to [those] . . . prepared for you for the Houghton Lake 'Brook' facility.  In fact, we

believe that you submitted prints of our drawings."  Pl.'s Am. Compl. Ex. B.  Mr. Dorchen

indicated that Plaintiff was the "author of that design and holds all copy and use rights in that

- 2 -

design." *Id*. In concluding the letter, Mr. Dorchen wrote, "Please accept this letter as notice of our intent to protect our rights in our work product. Any further action of this project which continues your infringement on our exclusive rights is prohibited and will only serve to exacerbate damages. We hope you'll make the proper choice as to how you intend to proceed." *Id*.

Defendant Brook responded on October 6, 2009 through William Carey, its legal counsel. Mr. Carey explained that Plaintiff's drawings were only submitted "[i]n order to give the Planning Commission some understanding of our business concept[.]" Pl.'s Am. Compl. Ex. C. Mr. Carey wrote that he was "academically" interested in Plaintiff's assertion it held "all copy and use rights" in its design, and that while Plaintiff's work on the other facilities was appreciated, Defendant Brook intended to "move forward aggressively with [its] building plans in Cheboygan." *Id*.

In October 2009, Plaintiff registered The Brook of Houghton Lake plan with the United States Copyright Office. Pl.'s Am. Compl. Ex. A. Plaintiff indicated it was the author of the plan and the copyright claimant. *Id*. Plaintiff also indicated the plan was completed in 2004 and first published on November 29 of that year. *Id*. Certificate of Registration VA 1-688-432 (Registration 432), covering the plan, was then issued with an effective date of October 9, 2009. *Id*.

As promised, Defendant Brook moved forward with the Cheboygan project. It contracted with Defendant Practical Engineers, Inc. to create architectural plans for The Brook of Cheboygan facility. A letter from Defendant Practical to the Cheboygan County Planning Office indicates, however, that Defendant Practical did not create new, original plans. Defendant Practical wrote, "The Brook plans you have are for one of the other facilities. While the building

floor plan is identical to the proposed facility, we will submit a drawing with the correct north arrow on the drawings." Pl.'s Am. Compl. Ex. D. Defendant Practical then submitted a plan, identical to Plaintiff's Houghton Lake plan, except that the North arrow was redrawn by hand in the opposite direction. Pl.'s Am. Compl. Ex. E.

Approval from the Cheboygan Planning Commission was secured for The Brook of Cheboygan facility, and the building was constructed. DBA again acted as General Contractor for the project. Plaintiff then filed a complaint against Defendants Brook and Principal on February 11, 2011, alleging copyright infringement, Lanham Act violations, and civil conspiracy. Pl.'s Compl., ECF No. 1. Defendants filed a motion to dismiss the complaint, which was granted. Plaintiff's Lanham Act and conspiracy claims were dismissed with prejudice, but Plaintiff was allowed to file an amended complaint regarding its copyright infringement claim. ECF No. 14. Plaintiff did so two weeks later.

Plaintiff's Amended Complaint alleges that it created copyrightable material with its Houghton Lake plan, which was then copied by Defendants and used to construct The Brook of Cheboygan facility in 2009. Defendants have filed a motion for summary judgment, alleging that Plaintiff does not own the copyrightable work in the Houghton Lake plan, and even if it did, Registration 432 is invalid and unenforceable. Def.'s Mot. 1–2.

## II

Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The focus must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986). All justifiable inferences from the evidence must be drawn

in the nonmoving party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III

To establish a copyright infringement claim, two elements must be proven: (1) the plaintiff has ownership of a valid copyright, and (2) the defendant copied constituent elements that are original. *Feist Publ'ns, Inc. v. Rural Tel. Servs. Co., Inc.*, 499 U.S. 340, 361 (1991). Defendants raise two issues for judgment as a matter of law, both attacking the first requirement: (1) Plaintiff's ownership of the copyrightable material in the Houghton Lake plan; and (2) the validity of Plaintiff's copyright covering the Houghton Lake plan, Registration 432.

### A

Defendants first claim that Plaintiff is not the owner of the copyrightable material in the Houghton Lake plan, and that summary judgment in their favor is appropriate. As a rule, Copyright ownership vests in the author of the work. 17 U.S.C. § 201. Typically, the author is the party who actually creates the work. § 102. There is, however, an exception for "works made for hire." If the work is made for hire, the owner is the person for whom the work was prepared. § 201(b). According to Defendants, DBA hired Plaintiff in 2001 to create the Roscommon plan, making the plan a "work made for hire" under the Copyright Act. If accurate, DBA then owns all the rights comprised in the plan "unless the parties have expressly agreed otherwise in a written instrument signed by them[.]" § 201(b). Because no such instrument exists, Defendants maintain DBA is the author of and owns all the rights to the Roscommon plan.

Further, Defendants assert the Houghton Lake plan is a "derivative work" of the Roscommon plan. A "derivative work" is "based upon one or more preexisting works[.]" § 101. "The copyright in a . . . derivative work extends only to the material contributed by the author of

such work, as distinguished from the preexisting material employed in the work; and does not imply any exclusive right in the preexisting material." § 103(b).  Defendants claim that they own the rights to the underlying Roscommon plan, and that because the Houghton Lake plan was based upon it and is nearly identical, they own the rights to the Houghton Lake plan as well.

The threshold question in this analysis is whether the Roscommon plan is a "work made for hire."  The Copyright Act defines a "work made for hire" as: "(1) a work prepared by an employee within the scope of his or her employment; or (2) a work specially ordered or commissioned for use as a contribution to a collective work . . . if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire." § 101.  In this case, the architectural work for the Roscommon plan was not done by any employee of DBA.  The architectural work "on all of 'The Brook' projects was exclusively performed by individuals who were all direct [Plaintiff] employees at the time the work was performed." Dorchen Aff. ¶ 5.  As such, Defendants rely on the work being commissioned by DBA to support its status as a "work made for hire."

Contrary to Defendants assertion, courts have concluded that architectural works cannot be considered under the work for hire doctrine. *See Warren Freedenfeld Associates, Inc. v. McTigue*, 531 F.3d 38, 48-49 (1st Cir. 2008) (citations omitted) ("[T]he Copyright Act enumerates certain types of works encompassed by the work for hire doctrine, and architectural drawings do not fit within that taxonomy."); *Richard J. Zitz, Inc. v. Pereira*, 225 F.3d 646, at *4 (2d Cir. 2000) (unpublished table decision) ("[D]rafting of architectural blueprints does not fit into any of the . . . nine categories of 'specially ordered' work."); *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1492 (11th Cir. 1990) ("[A]rchitectural drafting does not fall within

- 6 -

the nine enumerated categories of activities which may be done by independent contractors 'for hire[.]'").

Even if the Roscommon plan could be considered a "work made for hire," there has been no showing the parties expressly agreed, in writing, to view it that way. Defendants maintain the February 2001 contract between DBA and Plaintiff satisfies § 101's "express agreement" requirement. The termination clause in that agreement indicates, "All work performed up to the termination date shall be given to [DBA]." Defs.' Mot. Ex. B, at 7. Assuming the termination clause applies even if the agreement was fully performed, the language does not express the parties' intention to transfer Plaintiff's rights to the Roscommon plan to DBA, or that it was to be considered a "work made for hire."

Defendants advance two cases that indicate written agreements need not use specific language to establish the work was made for hire: *Warren v. Fox Family Worldwide, Inc*., 328 F.3d 1136 (9th Cir. 2003), and *Armento v. Laser Image, Inc*., 950 F. Supp. 719 (W.D. NC 1996). When the cases are examined, however, they offer no support for Defendants' position. In *Warren*, defendant MTM Productions (MTM) hired plaintiff Richard Warren "to render services to MTM for the television pilot photoplay now entitled 'Remington Steele.'" 328 F.3d, at 1140. The agreement between the parties provided,

> As Warren's employer for hire, MTM shall own in perpetuity, throughout the universe, solely and exclusively, all rights of every kind and character, in the musical material and all other results and proceeds of the services rendered by Warren hereunder and MTM shall be deemed the author thereof for all purposes.

*Id*. at 1141 (brackets omitted). The court found this language satisfied the "express agreement" requirement in § 101 despite its lack of the phrase "work made for hire."

Likewise, in *Armento*, although the contracts did not use magic language, they did satisfy § 101's "express agreement" requirement. There, the plaintiff created maps which were

incorporated into a collective work. *Armento*, 950 F. Supp. at 729. The maps were commissioned by an entity known as The Laser Image. *Id*. at 728. The relevant language from the contracts reads as follows: "The illustrated maps and advertising artwork produced by [the plaintiff] for The Laser Image remain the sole property of The Laser Image, and cannot be reproduced or used for any other purpose by [the plaintiff] without the written consent of The Laser Image." *Id*. at 729.

These cases, relied on by Defendants, contain contract language unlike the contract language in this case. The *only* reference to transfer of the Roscommon plan, contained in a paragraph entitled "Termination," indicates, "All work performed up to the termination date shall be given to [DBA]." Defs.' Mot. Ex. B, at 7. No reference to sole and exclusive rights, as in *Warren*; nothing about limitations on reproduction and use, as in *Armento*. Nothing to show the parties agreed and intended to consider the Roscommon plan "work made for hire," or to affirmatively transfer rights for use and authorship to DBA. Simply maintaining that the "work" would be transferred upon termination does not satisfy § 101's "express agreement" requirement.

Further, the Copyright Act draws a distinction between ownership of a copyright and of a material object:

> Ownership of a copyright, or of any of the exclusive rights under a copyright, is distinct from ownership of any material object in which the work is embodied. Transfer of ownership of any material object . . . does not of itself convey any rights in the copyrighted work embodied in the object[.]

§ 202. The transfer of Plaintiff's "work" to DBA upon termination, without any express language indicating it was to be considered "work for hire," simply transferred the physical architectural and structural drawings. Such an action does not transfer the right to the underlying work without an express agreement in writing. It follows that Plaintiff is the author of the Roscommon plan, owning any rights comprised in the plan.

Because Plaintiff is the author and owns the rights to the Roscommon plan, it is evident that Plaintiff also owns the derivative works which it later created. Therefore, Plaintiff owns the rights in the Houghton Lake plan, and Defendants' motion will be denied on this ground.

**B**

Defendants next argue that Plaintiff's copyright for the Houghton Lake plan, Registration 432, is unenforceable as a matter of law. Defendants set forth three reasons: (1) Plaintiff knowingly failed to disclose pre-existing material to the copyright office during the application process; (2) Plaintiff knew DBA owned the underlying copyright in the Roscommon plan; and (3) Plaintiff knowingly provided a false date of first publication. As outlined above, Defendants' second contention is untenable, and will be dismissed. The other two assertions will be analyzed below.

The Copyright Act requires that the application for copyright registration of a derivative work "shall include . . . an identification of any preexisting work or works that it is based on or incorporates, and a brief, general statement of the additional material covered by the copyright claim being registered." § 409(9). Defendants here claim that Plaintiff failed to comply with § 409(9), thereby making its registration unenforceable.

Contrary to Defendants' position, "The issue raised by § 409(9) is whether and to what extent the derivative design incorporates elements designed by someone else." *Frank Betz Associates, Inc. v. J.O. Clark Const., LLC*, 2010 WL 2253541, at *11 (M.D. Tenn. May 30, 2010). Where the evidence indicates that Plaintiff created derivative designs based on its own original designs, "the concerns that § 409(9) raises are not implicated." *Id.*

In *Christopher Phelps & Associates, LLC v. Galloway*, 492 F.3d 532, 536 (4th Cir. 2007), the plaintiff authored an architectural design, but did not register it for copyright. The plaintiff then created a derivative work based on its own original design. *Id.* When the plaintiff

discovered that the defendant was utilizing its derivative design to construct a house, it registered

the design for copyright protection and filed suit. *Id.* The Fourth Circuit established:

> [The plaintiff] was the author of the Bell and Brown Residence design and
> therefore owned the copyright in that work, even though it never registered that
> copyright. [The plaintiff] was also the author of the Bridgeford Residence design,
> which was a modification of the Bell and Brown Residence design. [The plaintiff]
> did register the Bridgeford Residence design, but not as a derivative work. It
> simply registered the entire design, as it was the author of the entire design.
> While [the plaintiff] only registered the Bridgeford Residence design, that
> registration satisfied the prerequisite for suit under 17 U.S.C. § 411 for the *entire*
> *design,* even though some of it was created earlier in the form of the Bell and
> Brown Residence design.

*Id.* at 539 (emphasis in original). The identical situation in this case calls for the same reasoned

conclusion. Plaintiff is the author of the Roscommon plan, which it used to create the Houghton

Lake plan. Although it did not register the Houghton Lake plan as a derivative work, that is

immaterial. The plan, in its entirety, was Plaintiff's own creation. To deny Plaintiff protection

for that plan, simply because it failed to identify an earlier version it created and incorporated,

would contravene the purpose of rule 409(9).

Defendants' reliance on *Rich & Rich Partnership v. Poetman Records USA, Inc.*, 714 F.

Supp. 2d 657 (E.D. Ky. 2010) *reconsideration granted in part,* 2010 WL 3199668 (E.D. Ky.

June 7, 2010), does nothing to alter this conclusion. In that case, Rich & Rich registered its

derivative work for copyright protection without identifying the pre-existing work that was

created by another author. *Id.* at 664. The court concluded this was not an immaterial mistake,

as it was done knowingly, and as such Rich & Rich's copyright was invalidated. *Id.* at 664-65.

In this case, Plaintiff did not utilize another author's work, but its own. Its failure to advise the

Copyright Office of this information did not deprive the Copyright Office from fully evaluating

the application. As in *Christopher Phelps*, Plaintiff is entitled to the protection of its own work.

- 10 -

Defendants' final argument can be dismissed in short order. They claim that because the Roscommon and the West Branch plans were published before November 2004, Plaintiff's failure to indicate an earlier publication date for the Houghton Lake plan renders Registration 432 invalid. As discussed above, it was appropriate for Plaintiff to register the Houghton Lake plan for copyright protection as its original work. Because that plan was first published in November 2004, it was appropriate for Plaintiff to indicate that fact in the application. That Plaintiff did not indicate the publication dates of the Roscommon or West Branch plans does not nullify Registration 432. It is not a clever ploy to gain the presumption of validity, as Defendants assert, but merely the truth. Therefore, Defendants' claim that Plaintiff's copyright, Registration 432, is invalid and unenforceable will also be denied.

## IV

Accordingly, Defendants' Motion for Summary Judgment, ECF No. 35, is **DENIED**.

On October 9, 2012, Defendants filed a Motion for Leave to Supplement the Evidentiary Record on Motion for Summary Judgment. Defendants wish to supplement the record with deposition testimony of Samuel Dorchen indicating the similarity between the Roscommon, West Branch, and Houghton Lake plans. As discussed above, the evidence has already been considered, and in fact, is detrimental to Defendants' argument. Therefore, Defendants' Motion for Leave to Supplement the Evidentiary Record, ECF No. 57, is **DENIED**.


Dated: October 15, 2012                           /s Thomas L. Ludington
                                                  THOMAS L. LUDINGTON
                                                  United States District Judge

- 12 -

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 15, 2012.

<u>s/Tracy A. Jacobs</u>
TRACY A. JACOBS