UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DORCHEN/MARTIN ASSOCIATES, INC.,

       Plaintiff,                            Case No. 11-10561
                                                    Honorable Thomas L. Ludington

v.

THE BROOK OF CHEBOYGAN, INC.;
PRACTICAL ENGINEERS, INC.,

       Defendants.
_____/

**OPINION AND ORDER DENYING
DEFENDANTS' MOTION FOR RECONSIDERATION**

Plaintiff Dorchen/Martin Associates, Inc. filed a complaint against Defendants The Brook of Cheboygan, Inc. and Practical Engineers, Inc., alleging copyright infringement. Plaintiff claims it created an architectural plan that Defendants used unlawfully. Defendants moved for summary judgment, claiming that Plaintiff did not own the copyrighted material comprised in the plan, and further, that Plaintiff's copyright registration was invalid. After consideration, Defendants' motion was denied.

Defendants then filed a motion to reconsider the opinion and order denying their motion for summary judgment. The Court concluded in the opinion that Plaintiff was the sole author of the plan in question and maintained control of any copyrights comprised in that plan. Defendants presently allege that the plan was not a work made for hire, but instead that Plaintiff is not the sole author. As before, Defendants argument is imaginative, but without merit. The motion for reconsideration will be denied.

**I**

Plaintiff provides comprehensive architectural consulting services for hire. In February 2001, Plaintiff agreed to develop construction documents, including architectural and structural plans, for DeWitt Builders AZ (DBA). DBA intended to construct an assisted living facility known as "The Brook" in Roscommon, Michigan. Plaintiff created the necessary construction documents and provided them to DBA. Then DBA, as General Contractor, constructed The Brook of Roscommon pursuant to Plaintiff's plan. Using Plaintiff-created plans, DBA constructed two other facilities: The Brook of West Branch and The Brook of Houghton Lake.[1] When creating the Houghton Lake Plan, Plaintiff did not contract with DBA as it had with The Brook of Roscommon facility, but instead with The Brook of Houghton Lake, Inc. James DeWitt, president of DBA, remained involved as an officer and director of The Brook of Houghton Lake, Inc.

Defendant Brook of Cheboygan, Inc. (Brook) was created on or about May 8, 2009. Mr. DeWitt was involved with the project and is an officer and/or director of Defendant Brook. In 2009, Plaintiff learned that DBA planned to use the Houghton Lake Plan to build a new facility in Cheboygan, Michigan. On September 29, 2009, Plaintiff sent Mr. DeWitt a letter explaining that any use of Plaintiff's plans to build another facility without permission would be copyright infringement.

The Brook Retirement Communities' legal representative responded that it intended to proceed. Plaintiff then registered the Houghton Lake Plan with the United States Copyright Office. Pl.'s Am. Compl. Ex. A. Plaintiff indicated it was the author of the plan and the

---

[1] The plan underlying The Brook of Houghton Lake project is referred to herein as the "Houghton Lake Plan."

copyright claimant. *Id*. Certificate of Registration VA 1-688-432 (Registration 432), covering the plan, was then issued with an effective date of October 9, 2009. *Id*.

Instead of retaining Plaintiff to develop the architectural plan for The Brook of Cheboygan facility, as with the three previous facilities, Mr. DeWitt decided that Defendant Practical Engineers, Inc. would do the job.[2] Construction of The Brook of Cheboygan facility commenced, with DBA again acting as General Contractor for the project

Plaintiff then filed a complaint against Defendants Brook and Practical on February 11, 2011, alleging copyright infringement, Lanham Act violations, and civil conspiracy. Pl.'s Compl., ECF No. 1. Defendants filed a motion to dismiss the complaint, which was granted. Plaintiff's Lanham Act and conspiracy claims were dismissed with prejudice, but Plaintiff was allowed to file an amended complaint regarding its copyright infringement claim. ECF No. 14. Plaintiff did so two weeks later.

Plaintiff's Amended Complaint alleges that it created copyrightable material with its Houghton Lake Plan, which was then copied by Defendants and used to construct The Brook of Cheboygan facility in 2009. Defendants filed a motion for summary judgment, alleging that Plaintiff does not own the copyrightable work in the Houghton Lake plan, and even if it did, Registration 432 is invalid and unenforceable. Defs.' Mot. 1–2. Because Plaintiff's plan was not a "work made for hire," but instead was based on a line of previous work created by Plaintiff, Defendants' motion was denied.

Defendants have filed a motion to reconsider that determination, asserting that the Court's October 15, 2012 opinion and order contains palpable defects and should be vacated. First and foremost, Defendants assert that James DeWitt was involved with the creation of Plaintiff's architectural plans — involving The Brook of Roscommon, The Brook of West

---

[2] Representing Defendant Practical on the other side of that handshake was Brian Ross.

Branch, and The Brook of Houghton Lake — to the point that he is a joint author and co-owner of any copyright comprised in those plans.

**II**

A motion for reconsideration will be granted if the moving party shows: "(1) a 'palpable defect,' (2) the defect misled the court and the parties, and (3) that correcting the defect will result in a different disposition of the case." *Michigan Dept. of Treasury v. Michalec*, 181 F. Supp. 2d 731, 733–34 (E.D. Mich. 2002) (quoting E.D. Mich. LR 7.1(h)(3)). A "palpable defect" is "obvious, clear, unmistakable, manifest, or plain." *Michalec*, 181 F. Supp. 2d at 734 (citing *Marketing Displays, Inc. v. Traffix Devices, Inc.*, 971 F. Supp. 262, 278 (E.D. Mich. 1997)). "Motions for rehearing or reconsideration which merely present the same issues ruled upon by the Court, either expressly or by reasonable implication, shall not be granted." *Michalec*, 181 F. Supp. 2d at 734 (brackets omitted) (quoting E.D. Mich. LR 7.1(h)(3)).

**III**

Defendants allege four errors in the Court's opinion and order that require reconsideration. Three of the errors — the Court's conclusion that the architectural work on the Roscommon plan was done solely by Plaintiff's employees; that Plaintiff owned any rights comprised in the Roscommon plan; and that Plaintiff therefore owned any rights to the derivative Houghton Lake Plan — are essentially one argument. Defendants believe that James DeWitt is a joint author of the Roscommon plan, which would throw a wrench into all three conclusions. The fourth alleged error Defendants raise is the Court's conclusion that Defendant Brook contracted with Defendant Practical for the creation of The Brook of Cheboygan Plan. Each is addressed below.

**A**

Defendant's primary argument in favor of their motion for reconsideration is that James DeWitt is a joint author of the Roscommon Plan, and any derivative plans that followed, because of his contributions during the creation process. But Defendants' argument is unpersuasive, and does not change the Court's conclusion that Plaintiff owns the copyright in the Roscommon Plan and the subsequent Houghton Lake Plan.

Copyright ownership of a protected work initially vests in the work's author. 17 U.S.C. § 201(a). When a work is "prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole," 17 U.S.C. § 101, the authors create a "joint work," *id.*, and are considered to be "joint authors." *Childress v. Taylor*, 945 F.2d 500, 505 (2d Cir. 1991). Thus, joint authors are entitled to "equal undivided interests in the whole work — in other words, each joint author has the right to use or to license the work as he or she wishes, subject only to the obligation to account to the other joint owner for any profits that are made." *Thomson v. Larson*, 147 F.3d 195, 199 (2d Cir. 1998) (citing § 201(a)); *Childress*, 945 F.2d at 508.

In an unpublished opinion, *BancTraining Video Sys. v. First Am. Corp.*, 956 F.2d 268 (6th Cir. 1992), the Sixth Circuit analyzed joint authorship, but did not establish a specific test for courts to apply when determining the issue. Defendants do not cite *BancTraining* or otherwise suggest what the Sixth Circuit's joint authorship test is or should be. Plaintiff's response, on the other hand, points to *Childress*, 945 F.2d 500; *Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061 (7th Cir. 1994); and *Ashton-Tate Corp. v. Ross*, 916 F.2d 516 (9th Cir. 1990), for the proposition that "joint authorship requires that the respective contributions of each alleged joint author must be independently copyrightable, and that the alleged co-authors intend, at the time the work is created, to regard themselves as co-authors." Pl.'s Resp. 10.

The Second Circuit's *Childress v. Taylor* test requires a party claiming joint authorship to show that (1) each party intended to be joint authors, and (2) each party made an independently copyrightable contribution to the work. *Childress*, 945 F.2d at 505–06; *see also Thomson*, 147 F.3d 195 (refining *Childress*' joint authorship test). After examination, this Court believes *Childress* states the appropriate test for determining joint authorship.

The Seventh Circuit provided persuasive reasoning for doing so in *Erickson*, 13 F.3d 1061, 1067–71 (7th Cir. 1994) (*Childress* best satisfies statutory definition of joint work, *Childress*' "independently copyrightable contribution" requirement provides consistency, promotes judicial efficiency, and reinforces goals of Copyright Act, and majority of courts considering joint authorship have applied *Childress*). Moreover, several other district courts in the Sixth Circuit have applied *Childress* and *Erickson* when confronting claims of joint authorship. *See Corwin v. Quinonez*, 858 F. Supp. 2d 903, 910 (N.D. Ohio 2012); *Downey v. Downey*, CIV 09-634-MRB-JGW, 2010 WL 3781715, at *2 (S.D. Ohio Aug. 26, 2010); *Tang v. Putruss*, 521 F. Supp. 2d 600, 606 (E.D. Mich. 2007); *Perry v. Herd*, 1:04-CV-195, 2006 WL 335522, at *18–*19 (E.D. Tenn. Feb. 14, 2006); *Balkin v. Wilson*, 863 F. Supp. 523, 528 (W.D. Mich. 1994).

As explained above, *Childress* requires a party claiming joint authorship to show that (1) each party intended to be joint authors, and (2) each party made an independently copyrightable contribution to the work. 945 F.2d at 505–06. With regard to intent, it is not enough that the parties intend their contributions to be merged into "inseparable or interdependent parts of a unitary whole." *See BTE v. Bonnecaze*, 43 F. Supp. 2d 619, 623 (E.D. La. 1999) (citing *Childress,* 945 F.2d at 507–08). Rather, the parties must "entertain in their minds the concept of joint authorship." *Childress,* 945 F.2d at 508; *see also Thomson,* 147 F.3d at 201 ("since

coauthors are afforded equal rights in the co-authored work, the equal sharing of rights should be reserved for relationships in which all participants fully intend to be joint authors.") (internal quotation marks omitted).

With regard to *Childress*' second prong, a putative joint author's contribution must be independently copyrightable. *Erickson*, 13 F.3d at 1072. As such, ideas, refinements, and suggestions are not sufficient to create joint authorship. *Id.* Rather, a party must identify specific contributions that were fixed in a tangible medium. *Id.* at 1071; *see also Bonnecaze*, 43 F.Supp.2d at 628 (ideas and insights contributed by drummer of rock band insufficient to establish joint authorship of underlying compositions, and drummer's contributions to sound recordings cannot serve as the required tangible expression for establishing joint authorship of underlying compositions). "Providing sketches, ideas or supervision over copyrightable material is not sufficient to make one a joint author." *BancTraining*, 956 F.2d 268, at *3 (citing *M.G.B. Homes, Inc. v. Ameron Homes Inc.*, 903 F.2d 1486, 1493 (11th Cir. 1990) (providing sketches and ideas does not constitute creating)).

Here, in support of their joint-author argument, Defendants offer deposition testimony from Samuel Dorchen, Plaintiff's Rule 30(b)(6) representative. Mr. Dorchen explains that Mr. DeWitt contributed to the architectural plans Plaintiff created, but nowhere does he indicate that Plaintiff intended Mr. DeWitt be considered a joint author. Further, Mr. Dorchen provided an affidavit indicating that the architectural work in the plans was done solely by Plaintiff's employees and that the underlying copyrights remain with Plaintiff.[3] Defendants have not

---

[3] Defendants have expressed concern about the fact that Mr. Dorchen's original affidavit, submitted with Plaintiff's response to Defendant's Motion for Summary Judgment, was not signed. Although Plaintiff attached an identical affidavit, this time with signature, to its response to Defendants' Motion for Reconsideration, Defendants assert that this affidavit "is in direct conflict" with Mr. Dorchen's deposition testimony and must be ignored. Defs.' Mot. 6. Plaintiff has indicated it intended to submit a signed affidavit before hearing on Defendants' Motion for Summary Judgment, but failed to do so when the Court cancelled the hearing and issued its Opinion and Order.

established that both parties in this case intended the work be considered the product of joint authors.

Further, as noted above, simply providing "sketches, ideas or supervision" is not sufficient to make one a joint author. *BancTraining*, 956 F.2d 268, at *3. While Plaintiff's Houghton Lake Plan contained copyrightable material, Defendants have not adequately demonstrated that Mr. DeWitt contributed independently copyrightable contributions to the plans. In *M.G.B. Homes*, 903 F.2d at 1493, a client contributed to the creation of architectural plans by producing sketches and retaining approval authority during the plan's creation. The Eleventh Circuit noted that "[s]uch involvement by a client in the preparation of architectural plans is normally expected . . . . Such involvement does not, however, ordinarily render the client an 'author' of the architectural plans." *Id*. (citation and quotation marks omitted).

Defendants have not identified a triable issue of fact concerning whether James DeWitt was a joint author of Plaintiff's Roscommon Houghton Lake Plans. Mr. Dorchen's deposition testimony that Mr. DeWitt had input during the creation process is not inconsistent with Mr. Dorchen's assertion that Mr. DeWitt was not, nor was he ever intended to be, a joint author on the project. Additionally, Defendants have not indicated any of Mr. DeWitt's contributions were independently copyrightable. Because Defendants cannot satisfy the *Childress* test, they have not established that Mr. DeWitt is a joint author of any of Plaintiff's plans, and there is no reason

---

As an initial matter, Mr. Dorchen's affidavit does not contradict his deposition testimony as presented by Defendants. His affidavit explains that the *architectural* work on the plans at issue was performed exclusively by Plaintiff's employees. His deposition testimony indicates that James DeWitt contributed ideas, sketches, and supervision during the creation process. The two ideas are not mutually exclusive. Mr. Dorchen has never claimed that Mr. DeWitt performed architectural functions, such as actually drafting the plans themselves, or that he acquired an interest in the underlying copyrights. Customer input is undoubtedly useful to architects, as well as customary when creating a custom plan, and such input does not indicate the client performed architectural work. Accordingly, Mr. Dorchen's affidavit does not contradict his deposition testimony, and need not be excluded on that basis.

Additionally, it is apparent that Plaintiff did not attempt to submit the affidavit with the sole intention of contradicting previous deposition testimony. Instead, identical affidavits were submitted both before and after Mr. Dorchen's deposition was conducted. While the first was unsigned, such an oversight, while careless, does not prevent this Court from considering it. Defendants have presented no authority indicating otherwise.

to reconsider the Court's Opinion and Order. The conclusions remain that Plaintiff is the sole author of the Roscommon and Houghton Lake Plans, owning any copyrights comprised therein.

**B**

In the October 15, 2012 Opinion and Order, the Court also wrote that "Defendant Brook moved forward with the Cheboygan project. It contracted with Defendant Practical Engineers, Inc. to create architectural plans for The Brook of Cheboygan facility." Opinion & Order, 3, ECF No. 58.

Defendants request that the record be clarified, claiming that the only "contract" for creating The Brook of Cheboygan plans was "a handshake between Mr. James DeWitt . . . and Mr. Brian Ross, of Practical Engineers." Defs.' Mot. 2. Defendants emphasize that Mr. DeWitt is president of DeWitt Builders AZ (DBA), and further state that Defendant Brook had no role in the development of The Brook of Cheboygan facility. *Id*. Defendants do not, however, note that Mr. DeWitt is also an officer and director of Defendant Brook in addition to being the president of DBA. Defendants also ignore the fact that The Brook Retirement Communities' legal counsel, William Carey, indicated that it was the Brook Retirement Communities that planned to "move forward aggressively" with construction in Cheboygan, not merely DBA and Defendant Practical.

Nevertheless, Defendants request will be granted — the statement that Defendant Brook contracted with Defendant Practical will not be considered an established fact at this point in the proceedings. This distinction, however, has no effect on the outcome of the Court's opinion and order. Who Practical contracted with to "create" The Brook of Cheboygan Plan is entirely irrelevant to the determination of whether Plaintiff is the sole owner of the copyrighted material for the The Brook of Houghton Lake plan. The statement in the Court's opinion and order will

be corrected concerning contractual agreement between Defendants Brook and Practical, but the rest of the opinion and order will remain.

## IV

Accordingly, it is **ORDERED** that Defendants' Motion for Reconsideration, ECF No. 61, is **DENIED**.

It is further **ORDERED** that the following line, found on page 3 of this Court's October 15, 2012 Opinion & Order, is deemed **REMOVED**: "It [Defendant Brook] contracted with Defendant Practical Engineers, Inc. to create architectural plans for The Brook of Cheboygan facility." The outcome of the Court's October 15, 2012 Opinion & Order, ECF No. 58, is unchanged.

Dated: December 17, 2012                              s/Thomas L. Ludington
                                                     THOMAS L. LUDINGTON
                                                     United States District Judge

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 17, 2012.

s/Tracy A. Jacobs
TRACY A. JACOBS